## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, D.C. 20003

         *Plaintiff,*

    v.

INTERNAL REVENUE SERVICE
Commissioner of Internal Revenue
Attention: CC: PA: Br 6/7
1111 Constitution Ave NW
Washington, D.C. 20224

        *and*

DEPARTMENT OF THE TREASURY
1400 Independence Ave. SW
Washington, D.C. 20250

        *Defendants.*

Civil Action No.: 24-1070

## COMPLAINT

1.    Plaintiff America First Legal Foundation (AFL) brings this action against the Department of the Treasury and the Internal Revenue Service (IRS) to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. Additionally, it may grant declaratory relief under 28 U.S.C. § 2201, *et seq.*

3.     Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

4.     The Plaintiff, AFL, is a nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and encourage public knowledge and understanding of the law and individual rights guaranteed under the United States Constitution and the laws of the United States. AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and other media, including social media platforms, all to educate the public.

5.     The Defendant, Treasury, is an agency under 5 U.S.C. § 552(f) headquartered at 1500 Pennsylvania Avenue N.W., Washington, D.C. 20220.

6.     The Defendant, IRS, is an agency under 5 U.S.C. § 552(f) headquartered at 1111 Constitution Avenue, N.W., Washington, D.C. 20224.

7.     The Defendants have possession, custody, and control of the requested records.

## BACKGROUND

8.     The IRS's National Research Program (NRP) randomly selects tax returns for audit to increase public confidence in the fairness of the tax system. The random sample selection is designed to provide a statistically valid representation of taxpayers' compliance characteristics. U.S. TREASURY INSPECTOR GEN. FOR TAX

2

ADMIN., NATIONAL RESEARCH PROGRAM TAX RETURN SELECTION PROCESS FOR TAX YEARS 2017 AND 2019, 2023-IE-R002 (Nov. 29, 2022) (available at https://bit.ly/3Z9BvCB).

9.    "Tax compliance and confidence in the fairness of the tax system could decline if taxpayers believe that the IRS targets specific taxpayers for NRP audits for inappropriate purposes." Press Release, U.S. Treasury Inspector Gen. for Tax Admin., *National Research Program Tax Return Selection Process for Tax Years 2017 and 2019* (Dec. 1, 2022), http://bit.ly/3XFiV40.

10.    On January 20, 2021, President Biden issued an Executive Order on "Advancing Racial Equity and Support for Underserved Communities Through the Federal Government." Exec. Order No. 13,985, 86 Fed. Reg. 7009 (Jan. 25, 2021).

11.    Among other things, the President ordered the Treasury Secretary to conduct an Equity Assessment on whether underserved communities and their members face systemic barriers, produce an Equity Action Plan for addressing those alleged barriers, and participate in the newly established Interagency Working Group on Equitable Data through the Assistant Secretary of the Treasury for Tax Policy. 86 Fed. Reg. at 7010–11.

12.    On May 18, 2021, Deputy Secretary Wally Adeyemo "met with racial equity experts, economists, and civil rights organizations to discuss the Biden-Harris Administration's tax policies," and he "reiterated the Treasury Department's commitment to racial equity as a key factor in the design of tax compliance." Press Release, *READOUT: Deputy Secretary of the Treasury Wally Adeyemo's Meeting with*

*Racial Equity Experts and Civil Rights Organizations on Biden Administration Tax Policies* (May 18, 2021), http://bit.ly/3Knb8oA.

13.   On December 14, 2021, at the Freedman's Bank Forum, Deputy Secretary Adeyemo and Assistant Secretary Batchelder detailed their work implementing Executive Order 13985. As part of the Interagency Working Group on Equitable Data, they announced they were "examining the tax system through a racial equity lens." Wally Adeyemo, Deputy Sec'y & Lily Batchelder, Assistant Sec'y for Tax Pol'y, DEP'T TREASURY, *FEATURED STORIES: Advancing Equity Analysis in Tax Policy* (Dec. 14, 2021), http://bit.ly/3KmgwrS.

14.   Despite Congress' prohibition on the IRS' direct collection of taxpayer race and ethnicity data, the IRS worked with other parts of the Department and the Census Bureau to "obtain microdata on race and ethnicity" and otherwise "impute race and ethnicity for tax data." *Id.*

15.   In March 2022, Janis Bowdler, the Department's first Counselor for Racial Equity, led the establishment of the Treasury Advisory Committee on Racial Equity (TACRE). Notice of establishment of the Treasury Advisory Committee on Racial Equity, 87 Fed. Reg. 12549 (Mar. 4, 2022).

16.   In April 2022, the Department's Executive Order 13985 Equity Action Plan reemphasized its focus on racial equity in tax policy. DEP'T TREASURY, EQUITY ACTION PLAN: ONE YEAR PROGRESS REPORT (Apr. 2022), https://bit.ly/3k9ZRgH.

17.   In January 2023, using "imputed" racial data, the Department released a working paper that found some disparities in the benefits of some expenditures

among White, Black, and Hispanic families, but which also found that "Black and Hispanic families, which make up a disproportionate share of low-wage workers, disproportionately benefit from the Earned Income Tax Credit," and "Hispanic families … also disproportionately benefit from the Premium Tax Credit [and] the Child Tax Credit." Lily Batchelder, Assistant Sec'y for Tax Pol'y & Greg Leiserson, Deputy Assistant Sec'y for Tax Analysis, DEP'T TREASURY, *FEATURED STORIES: Disparities in the Benefits of Tax Expenditures by Race and Ethnicity* (Oct. 25, 2021), http://bit.ly/3XHke2l.

18.    On December 5, 2022, during TACRE's first meeting, advisory committee members exclaimed that "tax policy disadvantages Black Americans advantaging white Americans," and "[i]t is not enough to say 'tax people making over $400,000' if those people who get audited are Black and Brown." *See* Meeting of the Treasury Advisory Committee on Racial Equity, 87 Fed. Reg. 69,078 (Nov. 17, 2022); DEP'T TREASURY, TACRE Meeting Materials, http://bit.ly/418s1cv.

19.    On February 16, 2023, President Biden issued an Executive Order on "Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government." Exec. Order No. 14,091, 88 Fed. Reg. 10825 (Feb. 22, 2023).

20.    Among other things, federal agencies were ordered to "prevent and remedy discrimination, including by protecting the public from algorithmic discrimination," which it defined as "instances when automated systems contribute to unjustified different treatments or impacts disfavoring people based on their actual

or perceived race, color, ethnicity … or any other classification protected by law." 83 Fed. Reg. at 10831–32.

21.     On March 10, 2023, Treasury Secretary Yellen testified to Congress that the IRS was not planning to change its process to make audit decisions based on taxpayers' race. *See* Chris Pandolfo, *Yellen Answers Whether IRS Will Consider Race, Gender in Audits as Part of Biden 'Equity' Push*, FOX BUS. (Mar. 10, 2023), https://fxn.ws/49BQKc8.

22.     During the TACRE meeting on June 8, 2023, however, Secretary Yellen acknowledged that while the existing IRS algorithm disproportionately audited black taxpayers, the discrepancy was "not conscious." TACRE Meeting Minutes (June 8, 2023), https://bit.ly/4d0o936.

23.     At the end of that meeting, the Research and Data Equity Subcommittee identified its first recommendation: "Increased transparency through annual reporting on racial disparities in audits [including] six methods to support the recommendation … and also report to the Secretary by March 2024 on the *changes implemented to correct disparities in tax audits.*" *Id.* (emphasis added).

24.     During TACRE meeting on the September 19, 2023, IRS Commissioner Danny Werfel described how two sets of changes—reducing the number of correspondence audits of refundable credits and changes to earned income tax credit (EITC) audit selection—would reduce audit disparities. TACRE Meeting Minutes (Sept. 19, 2023), https://bit.ly/3VSFwwO.

25. Moreover, TACRE committee members considered whether "people harmed by audit disparities [sic]" would receive "redress." *Id.*

26. During the TACRE meeting on December 7, 2023, the Committee revisited "audit disparities and how to receive redress for folks who were overly audited" and agreed to take the matter under advisement. TACRE Meeting Minutes (Dec. 7, 2023), https://bit.ly/49CHep2.

27. On a *Black Lawyer Podcast* episode released on April 9, 2024, Rep. Jasmine Crockett, the Democratic congresswoman from Texas, suggested that Black Americans should be exempt from paying taxes as a form of reparations, but she also admitted that the plan may not be a success because many within the community "aren't really paying taxes in the first place." *See* Kyle Morris, *Texas Dem Suggests Black People Shouldn't Pay Taxes as Form of Reparations: 'Puts Money Back in Your Pocket,'* FOX NEWS (Apr. 10, 2024), https://fxn.ws/3JlHHBm.

## AFL'S FOIA REQUEST

28. On February 21, 2023, AFL submitted a FOIA request to the IRS and the Department of the Treasury seeking records and communications relating to race, color, and ethnicity as factors relevant to tax audit policy. Ex. 1.

29. The request identified the relevant search terms, custodians, and timeframe. *Id.* at 4–5.

30. The request also sought a fee waiver. *Id.* at 5–6.

*Department of the Treasury*

31.     On April 19, 2023, the Department of the Treasury acknowledged the request and assigned it tracking number 2023-FOIA-00264. Ex. 2.

32.     As of the date of this filing, the Department of the Treasury has not released any records responsive to AFL's FOIA requests.

*IRS*

33.     On March 16, 2023, the IRS acknowledged the request via email. Ex. 3.

34.     This email assigned the request tracking number 2023-08865. *Id.*

35.     On May 29, 2023, the IRS sent a letter estimating a final response by August 25, 2023. Ex. 4.

36.     On November 17, 2023, the IRS sent a letter estimating a final response by February 16, 2024. Ex. 5.

37.     On February 29, 2024, the IRS sent a letter estimating a final response by May 24, 2024. Ex. 6.

38.     As of the date of this filing, the IRS has not released any records responsive to AFL's FOIA requests.

**CLAIM FOR RELIEF**

**Violation of the FOIA, 5 U.S.C. § 552**

39.     AFL repeats paragraphs 1–38.

40.     AFL properly requested records within the possession, custody, and control of the Defendants.

41.     The Defendants failed to conduct searches for responsive records.

42. Moreover, because Defendants failed to conduct searches, they have failed to disclose any segregable, non-exempt portions of responsive records. *See* 5 U.S.C. § 552(b).

43. The Defendants have failed to respond to AFL's requests within the statutory time period. *See* 5 U.S.C. § 552(a)(6).

44. Accordingly, AFL has exhausted its administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C).

45. The Defendants have violated the FOIA by failing to reasonably search for records responsive to AFL's FOIA request and release nonexempt records within the prescribed time limit.

## PRAYER FOR RELIEF

WHEREFORE, AFL respectfully requests that this Court:

i. Declare that the records sought by AFL's requests must be disclosed pursuant to 5 U.S.C. § 552;

ii. Order the Defendants to search immediately, demonstrating search methods reasonably likely to lead to the discovery of responsive records;

iii. Order the Defendants to produce by a date certain all non-exempt records responsive to AFL's FOIA requests, accompanied by a Vaughn index of any responsive records or portions of responsive records being withheld under a claim of exemption;

iv. Order the Defendants to grant AFL's requests for fee waivers;

v.      Award AFL attorneys' fees and costs incurred in this action under 5

U.S.C. § 552(a)(4)(E); and

vi.     Grant AFL such other and further relief as this Court deems proper.


Date: April 15, 2024

Respectfully Submitted

/s/ *Jacob Meckler*
Michael Ding (D.C. Bar No. 1027252)
Jacob Meckler (D.C. Bar No. 90005210)
(972) 861-2132
Michael.Ding@aflegal.org
Jacob.Meckler@aflegal.org
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, D.C. 20003

*Counsel for the Plaintiff*
*America First Legal Foundation*